### HARMON *v.* FRYE.

#### Opinion delivered May 27, 1912.

DAMAGES—LOSS OF PROFITS.—Where a building and apparatus for operating a moving picture show were leased for the purpose of operating same, and the lessee was wrongfully evicted from the building and deprived of the machinery, and the proof showed the average daily profit of the business, the lessee was entitled to recover as damages the amount of the profits of which he was thus deprived.

Appeal from Polk Circuit Court; *Jefferson T. Cowling,* Judge; affirmed.

#### STATEMENT BY THE COURT.

Appellee sued appellant for damages for being evicted from a certain building and deprived of the use of a moving picture machine, which he claimed to have rented for the pur-

pose of operating a moving picture show in the city of Mena, Arkansas.

It was alleged that for an agreed sum of fifty dollars per month he rented the building and moving picture outfit situated in it from appellee for the purpose of giving moving picture exhibitions at which an admission fee was to be charged by him, and for the purpose of making a profit out of said exhibitions, which was known to appellant. That he paid forty dollars of the fifty dollars rent due, and on the eighth day after he had rented the building appellant, with the intention to render the premises useless to him and for the purpose of injuring him in the operation of it, entered the building and removed the lens and crank thereof from the moving picture machine, without which it was impossible to operate it, and without his leave, and before the expiration of the month, entered the building and placed another tenant in possession of the moving picture machine and all parts thereof. He alleged further that he had made contracts with different companies for the lease of films for operating the picture show and advertised the giving of exhibitions. That he was deprived of the use of the premises for a period of twenty days, and that the profits from the business in that time would have amounted to $300. That he was further damaged by the lease of the films $16, and, for advertising $5, in all $521, for which judgment was prayed.

Defendant admitted renting the premises for $50 per month, with some other consideration, which he alleged was the assumption by appellee of a debt of $30 due him by one Siegel, at the time, who had been operating the picture show; denied removing the lens and crank from the moving picture show machine, and that appellee had paid him $40 on the rent and tendered the other $10. He further alleged that appellee had carried away without his consent the books and file records of all reels that had been used in the operation of the moving picture show since it was started, and that they were of the value of $200, and prayed judgment for that sum and the $40 which he claimed was balance due on rent.

Appellee replied, denying the allegations of the answer.

The facts of the case are substantially that appellee

rented the building and the moving picture show apparatus for exhibiting and the stage and canvas upon which to throw the pictures for one month, as he claimed, for a rental of $50 per month in advance. That he took possession on the 8th of March, and gave one exhibition or show on either that or the next day. That he paid $40 of the rent on the 10th of March, and agreed to pay the balance, the other $10, in a few days.

Appellant stated that he rented the building and the picture show outfit to appellee for one month, and said that, in addition to the $50 rent per month, appellee was to pay a $30 debt owed by one Siegel, who had been operating a picture show in the building. He admitted receiving the $40 from appellee, and stated that he credited him with $30 thereof upon the Siegel debt and $10 upon the rent, and that appellee was still due him $40 rent for the month. He denied having removed the lens and crank from the moving picture machine. The proof shows that he and Frye only had keys to the building, and a witness testified that he saw appellant's son with the crank and lens of the machine at the drug store in Mena on the night of the 16th, the night appellant claimed that appellee had assumed and agreed to pay the $30 Siegel debt and told him that he would close him out if it wasn't paid.

Appellee testified further that the expenses in running the show per day, including the film service, advertising and help, would amount to from $8 to $8.50; that the gross receipts for the nine days which the show was operated amounted to $119.05, gave the amount for each day, and the expenses for the nine days, rent not included, amounted to $39.15. A witness testified that he rented the building, and took possession of the show three or four days after appellee quit and ran it a month every night as a ten cent show, and it was not a paying business, and that he lost $15 besides his time. Appellant testified that he and his partner had also operated this picture show as a ten cent show for a month or so and lost money on it, and that he was in the show while appellee was running it, and that the crowds that attended during the time he and his partner were operating it averaged up with the crowds that attended appellee's shows and were sometimes greater.

The court instructed the jury, which returned a verdict for $80, and from the judgment the appellant appealed.

*J. I. Alley*, for appellant.

1. Plaintiff was not entitled to recover, and the court should so have instructed the jury, as the damages were entirely too remote and were speculative and uncertain. 91 Ark. 433; 78 *Id.* 336; 80 *Id.* 228. Profits are not allowed unless clearly within the contemplation of the parties when the contract was made. 97 Ark. 522; 69 Ark. 219, and cases *supra*.

2. The court erred in its charge to the jury. If entitled to recover at all, which is denied, his profits could only be the amount left after paying all necessary expenses. 95 Ark. 365.

*Elmer J. Lundy*, for appellee.

1. The loss of profits was recoverable. *Border City Ice & Coal Co.* v. *Adams*, 69 Ark. 219; *Mid. V. R. R. Co.* v. *Hoffman*, 91 Ark. 180; *Howard* v. *Stillwell, etc., Mfg. Co.*, 139 U. S. 199, 35 L. Ed. 147; *The Anvil Min. Co.* v. *Humble*, 153 U. S. 540, 38 L. Ed. 814; *Ry. Co.* v. *Beard*, 56 Ark. 309; *Wakeman* v. *Wheeler & Wilson*, (N. Y.) 4 N. E. 264, and cases cited therein. *Central Coal & Coke Co.* v. *Hartman*, 49 C. C. A. 244; *Hurley* v. *Oliver*, 91 Ark. 427; *Spencer Medicine Co.* v. *Hall*, 78 Ark. 336; *Lumber Co.* v. *Kittrell*, 80 Ark. 228; *Jackson* v. *Stanfield*, (Ind.) 37 N. E. 14; *Gagnon* v. *Sperry & Hutchinson Co.*, (Mass.) 91 N. E. 761; *Singer Mfg. Co.* v. *Reeves Lbr. Co.*, 95 Ark. 363; 13 Cyc. 53; *Simmons* v. *Brown*, 73 Am. Dec. 66.

2. The profits were not speculative and evidence of profits made while in business was admissible. 4 Enc. of Evidence, p. 24; 13 Cyc. 58-59; *Gagnon* v. *Sperry & Hutchinson Co.*, (Mass.) 92 N. E. 761; 2 Elliott on Evidence, § 1994; *Smith* v. *Eubanks*, 72 Ga. 280.

KIRBY, J., (after stating the facts). It is contended that the loss of profits was not in contemplation of the parties when the contract was made, and that the damages are so remote, speculative and contingent that no recovery can be had.

It is undisputed that the building and picture show apparatus was leased to appellee for the purpose of operating a moving picture show, and the jury have found that he was

wrongfully evicted therefrom and deprived of machinery, making it impossible to operate the show for a period of twenty days.

The undisputed testimony shows further the actual receipts and expenses of the business during the nine days it was operated, and that appellee was making therefrom a daily average profit of more than $11, when he was compelled to quit business.

"A recovery of profits as in the case of damages for the breach of contracts in general depends upon whether such profits were within the contemplation of the parties at the time the contract was made; and if they are such as grow out of the contract itself, and are the direct and immediate result of its fulfillment, they form a proper item of damages. 13 Cyc. 53-54. Such damages "must be certain both in their nature and in respect to the cause from which they proceed. It is against the policy of the law to allow profits as damages, where such profits are remotely connected with the breach of contract alleged, or where they are speculative, resting only upon conjectural evidence or the individual opinions of the parties or witnesses." 13 Cyc. 53. *Spencer Medicine Co.* v. *Hall,* 78 Ark. 336; *Beekman Lbr. Co.* v. *Kittrell,* 80 Ark. 232; *Hurley* v. *Oliver,* 91 Ark. 433.

It is not questioned that the building and motion picture apparatus were rented for the purpose of exhibiting motion picture shows therein by appellee, with the expectation of receiving gain; and necessarily the profits arising therefrom were reasonably within the contemplation of the parties at the time the contract was made, and the damages assessed by the jury are not speculative, resting only upon the individual opinion of the parties or witnesses, but based upon the facts of the daily receipts and expenditures of the eight days prior operation of the business, which would have been continued but for the wrongful act of appellant.

The jury, under proper instructions as to the amount of credit which should be allowed appellant in assessing the damages according as they should find whether appellee agreed to pay $50 rent, or $50 and the $30 Siegel debt, additional, as claimed by appellant, assessed the damages at $80, and the evidence is sufficient to support the verdict.

If there was an exception saved to the instruction relative to assessing the damages for the twenty days, which is doubtful, we do not think the instruction open to appellant's objection; and, if it was defective, the defect should have been reached by specific objection, which was not made.

Finding no error in the record, the judgment is affirmed.